UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-02694-SB-SK | Date: | June 1, 2022 |
|---|---|---|---|

| Title: | *Mori Rubin v. RadNet Management, Inc. et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER GRANTING PETITION FOR PRELIMINARY INJUNCTION [Dkt. No. 10]**

　　　Petitioner Mori Rubin, the Director of Region 31 of the National Labor Relations Board (NLRB), filed this action on April 22, 2022.  Dkt. No. 1.  She seeks a temporary injunction restraining Respondent RadNet Management, Inc. from engaging in unfair labor practices related to its negotiations with the National Union of Healthcare Workers (the Union).  Dkt. No. 10.[1]  The Union has initiated proceedings against Respondent before the NLRB alleging the same unfair labor practices, and Petitioner has brought this action to obtain interim relief pending the resolution of those proceedings.  The Court finds this matter suitable for resolution without oral argument and vacates the June 3, 2022 hearing.  Fed. R. Civ. P. 78; L.R. 7-15.  For the reasons stated below, the Court **GRANTS** the petition.

---

[1] Petitioner's memorandum of points and authorities is located at Dkt. No. 10, and the exhibits thereto are located together with the petition at Dkt. No. 1.

Before considering the merits of the petition, the Court addresses Respondent's misconduct and abuse of process on this matter. Petitioner filed her memorandum in support of a temporary injunction on April 26. Respondent filed an opposition on May 31—18 days after the opposition deadline and only 3 days before the scheduled hearing. Dkt. No. 19. In doing so, Respondent did not request an extension of the opposition deadline or seek leave to file an untimely response. Indeed, Respondent does not even bother to address the untimeliness of its response. Such blatant disregard for the rules prejudices the Petitioner (who has no opportunity to file a reply), imposes needless burdens on an already taxed court, and disrupts the orderly administration of justice. Accordingly, the Court **STRIKES** Respondent's untimely opposition. *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (district courts have inherent power to control their dockets, including the power to strike); *Mpoyo v. FIS Mgmt. Servs., LLC*, 840 F. App'x 307, 308 (9th Cir. 2021) (citing *Ready Transp., Inc.* and finding a district court did not abuse its discretion in striking an untimely summary judgment opposition); *see also* L.R. 7-12 ("The failure to file any required document, *or the failure to file it within the deadline*, may be deemed consent to the granting or denial of the motion . . . ." (emphasis added)). The Court treats the Petition as unopposed and grants it on that ground and on the merits.[2]

## BACKGROUND

Respondent is an outpatient diagnostic imaging provider. It operates several imaging centers, including the two at issue in this case—the San Fernando Valley Advanced Imaging Center (identified by Petitioner as SFP) and the San Fernando Valley Interventional Radiology and Imaging Center (SFI). Petition Ex. 2, at 61–62.[3] On March 14, 2018, Petitioner certified the Union as the representative for a unit of bargaining employees at both facilities. Petition Ex. 4, at 621–32. Respondent repeatedly challenged this certification over the next few years and, in the interim, refused to bargain with the Union. *Id.* at 648–769. In 2019, the NLRB denied Respondent's request for reconsideration and also found that, by refusing to bargain with the Union, Respondent had engaged in unfair labor practices in violation of § 8(a)(5) of the National Labor Relations Act (NLRA). *Id.* at 652–54. The NLRB petitioned the Ninth Circuit for enforcement of the certification, and

---

[2] Even if the Court were to consider the merits of Respondent's opposition, it would still find that Petitioner demonstrates a temporary injunction is appropriate.

[3] The page numbers in this Order refer to the exhibit pagination (e.g., 61 of 679), rather than the docket pagination.

Respondent cross-petitioned for review of the decision. The Ninth Circuit granted the NLRB's application for enforcement and denied Respondent's cross-petition in June 2020. *Id*. at 670–79.

A. **Bargaining History**

Following the Ninth Circuit's mandate, Respondent's chief negotiator Don Carmody and the Union's chief negotiator Ron Collins met in December 2020 to set bargaining ground rules. Bargaining then commenced in January 2021. The parties met several times over the next six months to negotiate for both the SFP and SFI units, as summarized below:

**SFP Unit**

1. January 19: The Union sent Respondent 14 proposals before the bargaining session. Respondent had no responses to them, nor did it have any proposals of its own.
2. February 24: The session lasted three minutes because Respondent still had no responses to the Union's proposals.
3. March 29: Respondent provided a response to one of the Union's 14 proposals and submitted seven of its own proposals. The Union asked when it could expect a response on its remaining proposals. Respondent would not provide a date and abruptly ended the session.
4. March 31: The Union rejected one of Respondent's proposals, and Respondent submitted four more proposals.
5. April 22: Respondent did not have responses to any of the Union's outstanding proposals but promised it would have responses at the next bargaining session. The Union rejected three of Respondent's proposals.
6. April 30: Respondent still had no responses to the Union's outstanding proposals. The Union rejected eight of Respondent's proposals; it offered to provide reasoning for each rejection, but Respondent declined.
7. May 6 and 19: The parties exchanged offers on an employee raise. Respondent abruptly ended the session after the Union noted that it was still waiting for responses on all of its noneconomic proposals.

**SFI Unit**

1. <u>January 26</u>:  The Union sent Respondent 15 proposals in advance of the session.  The meeting lasted five minutes because Respondent had no responses to them.

2. <u>February 22</u>:  Respondent had no responses to the Union's outstanding proposals but submitted four proposals of its own.

3. <u>April 16</u>:  The Union submitted its counteroffers to Respondent's four proposals, and the parties reached a tentative agreement on three provisions.  Respondent also submitted five new proposals.

4. <u>April 23</u>:  The session lasted six minutes.  The Union rejected three of Respondent's proposals with short explanations of its reasoning, and the parties tentatively agreed to three provisions.  Respondent had no response to any of the Union's outstanding proposals.

5. <u>May 17 and 24</u>:  The parties discussed the same issues that were covered at the May 6 and 19 SFP sessions.

6. <u>June 10</u>:  In advance of the bargaining session, Collins sent Carmody an email outlining (1) all the Union's outstanding proposals to which Respondent had not responded and (2) the proposals to which the parties had tentatively agreed but Respondent had failed to sign.  When Collins began to discuss the email at the session, Carmody said the email was inaccurate; he began shouting, called Collins a liar, and then abruptly ended the meeting.

Petition <u>Ex. 3</u>, at 100–05, 244.

The parties met again on June 24, 2021, to bargain for the SFP unit in the morning and the SFI unit in the afternoon.  At the SFP session, the Union introduced a new member of its negotiation team, Rabbi Neil Comess-Daniels.  <u>Id</u>. at 245.  The Union included him in an attempt to address Carmody's practice of abruptly ending sessions or engaging in "inappropriate language and behavior while at the negotiating table."  <u>Id</u>.  Rabbi Comess-Daniels spoke for approximately five minutes about the importance of treating people with respect before Carmody called for a recess.  <u>Id</u>.; <u>Petition</u> at 6.  Respondent's negotiation team did not return to the SFP negotiation session, nor did it attend the afternoon SFI session.  Petition <u>Ex. 3</u>, at 245.  Five days later, Carmody demanded to bargain over a ground rule about the Union's decision to include a religious figure on its negotiation team.  <u>Id</u>. at 245–46.  Collins replied that the Union would not reopen

bargaining over the ground rules because the parties had not established any ground rules about who could or could not be included in negotiations, and they each had a right to decide who attends negotiations on their behalf. *Id*. at 246–47. Over the next few months, the Union sent several requests to resume bargaining, but Respondent refused each time. *Id*. at 247–48, 408, 574–76. The parties did not resume bargaining until March 2022, when Respondent agreed to meet and discuss the SFP unit, but no progress has been made. Bargaining has not yet resumed with respect to the SFI unit. *Id*. at 614–20.

### B.     Failure to Provide Information

During the same six-month period from January to June 2021, the Union also tried to obtain information from Respondent about its payroll records and lunch waiver forms, which allow employees to work through their meal periods. *Id*. at 428. The Union requested copies of the waivers in March 2021; Respondent did not reply to this request until June 2021. The Union had to follow up two weeks later and request more information because Respondent had provided two "completely different" forms. *Id*. at 429. The Union also requested that Respondent provide payroll records for the SFI unit. Respondent contended that this request was vague and not clearly relevant to the parties' bargaining efforts. *Id*. at 429–30. It has yet to provide the Union with the requested payroll or waiver information. *Id*.

\*     \*     \*

The Union filed multiple charges with the NLRB between June and August 2021. Petition Ex. 2, at 61–62. The NLRB consolidated the cases into a single complaint in February 2022, which alleges that Respondent violated § 8(a)(1) and (5) of the NLRA by refusing to bargain with the Union in good faith. *Id*. at 65–67. Respondent answered the complaint in March, *id*. at 79–93, and the NLRB's hearing before an Administrative Law Judge commenced on May 3, 2022 and appears to still be ongoing, *id*. at 97 (noting that the hearing will continue "on consecutive days thereafter until concluded").

While the NLRB conducts its proceedings, Petitioner seeks a temporary injunction against Respondent to: (1) meet and bargain with the Union in good faith; (2) provide the Union with its requested payroll records and waiver forms; (3) post copies of this Order at its facilities; and (4) hold mandatory meetings to read this Order aloud to employees.

## LEGAL STANDARD

Section 10(j) of the NLRA authorizes a district court to grant temporary injunctive relief pending the NLRB's resolution of unfair labor practice claims. 29 U.S.C. § 160(j). The purpose of such relief is to preserve the NLRB's authority while it adjudicates unfair labor practice proceedings by enjoining an employer from continuing to commit the alleged violations. *See Scott ex rel. N.L.R.B. v. Stephen Dunn & Assocs.*, 241 F.3d 652, 657, 660 (9th Cir. 2001) ("To permit illegal employer conduct to go unaddressed while the [NLRB's] corrective machinery grinds toward resolution would subvert the underlying purposes of section 10(j) and allow those who commit unfair labor practices to reap the benefits of that conduct."), *abrogated on other grounds by McDermott v. Ampersand Pub., LLC*, 593 F.3d 950 (9th Cir. 2010). Courts apply the usual preliminary injunction factors to § 10(j) applications—that is, Petitioner must demonstrate that (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Frankl v. HTH Corp.*, 650 F.3d 1334, 1355 (9th Cir. 2011) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). In the Ninth Circuit, a temporary injunction may issue where there are "serious questions going to the merits" and the "balance of hardships . . . tips sharply towards the Regional Director," provided the other two *Winter* factors are also met. *Id*. (cleaned up) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

## DISCUSSION

In evaluating the first factor, likelihood of success on the merits, a court must account for its "lack of jurisdiction over unfair labor practices, and the deference accorded to NLRB determinations by the courts of appeals." *Miller ex rel. N.L.R.B. v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 460 (9th Cir. 1994), *abrogated on other grounds by Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200, AFL-CIO*, 611 F.3d 483 (9th Cir. 2010). Thus, a petitioner can establish a likelihood of success "by producing some evidence to support the unfair labor practice charge, together with an arguable legal theory." *Id*. Petitioner alleges that Respondent has engaged unfair labor practices under § 8(a)(1) and (5) of the NLRA. Section 8(a)(1) makes it an unfair labor practice to interfere with the rights of employees to organize and bargain collectively, and § 8(a)(5) makes it an unfair labor practice for an employer to "refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(1), (5); *see also Frankl*, 650 F.3d at 1358 (an employer's duty to bargain under § 8(a)(5) includes an obligation

to bargain in good faith). As a violation of § 8(a)(5) also establishes a violation of § 8(a)(1), *Frankl*, 650 F.3d at 1356, the Court addresses only Petitioner's § 8(a)(5) claim.

In assessing whether an employer is bargaining in good faith, "the Board looks to the 'totality of the [r]espondent's conduct, both at and away from the bargaining table.'" *Id*. at 1358 (alteration in original) (quoting *In re Hardesty Co.*, 336 N.L.R.B. 258, 259 (2001)). As detailed above, Petitioner produces sufficient evidence to support her allegation that Respondent has failed to bargain with the Union in good faith. For six months, Respondent failed to respond to most of the Union's proposals; its negotiator abruptly ended bargaining sessions and engaged in inappropriate behavior; and Respondent refuses to provide the Union with requested payroll and lunch waiver information. Respondent then refused to bargain at all from June 2021 through March 2022, because the Union included a rabbi as one of its negotiators. This behavior comes on the heels of Respondent's refusal to bargain with the Union for more than two years while it contested the Union's certification as a collective bargaining representative, which the NLRB has already determined was an unfair labor practice under § 8(a)(5). Petition Ex. 2, at 652–54. Under these circumstances, Petitioner has shown a likelihood of success on the merits of her § 8(a)(5) claim.

Petitioner has also established a likelihood of irreparable harm. The Ninth Circuit has held that

> a finding of likelihood of success as to a § 8(a)(5) bad-faith bargaining violation in particular, along with permissible inferences regarding the likely effects of that violation, can demonstrate the likelihood of irreparable injury, absent some unusual circumstance indicating that union support is not being affected or that bargaining could resume without detriment as easily later as now.

*Frankl*, 650 F.3d at 1363; *see also Garcia ex rel. N.L.R.B. v. S & F Mkt. St. Healthcare*, LLC, No. CV 12-1773 PA (VBKx), 2012 WL 1322888, at *11 (C.D. Cal. Apr. 17, 2012) ("Demonstrating irreparable harm from a § 8(a)(5) violation is not a heavy burden."). The Ninth Circuit has explained that such violations prevent the execution of a collective bargaining agreement, which denies employees "the opportunity to achieve the economic benefits that a CBA can secure for workers." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011) (NLRB "generally does not order retroactive relief" and even if it did, monetary damages cannot compensate employees for depriving them of their right

to union representation). A failure to bargain in good faith also deprives employees of the noneconomic benefits that unions can provide, weakens support for the union, and threatens the "industrial peace" achieved by collective bargaining. *Id*. at 1192; *see also Frankl*, 650 F.3d at 1363 (same).

Petitioner produces evidence that Respondent's failure to bargain in good faith has already started to weaken support for the union. Employees have expressed frustration with the delay, stopped returning calls from union representatives, resigned, become disillusioned with the benefits of collective bargaining, and expressed fear that they would be fired for associating with the Union. Petitioner Ex. 3, at 322–34. In light of Petitioner's likelihood of success on her § 8(a)(5) claim, the inherent harms associated with the violation, and the evidence that such harm has already started to occur, Petitioner has shown a likelihood of irreparable harm in the absence of an injunction.[4]

The final two *Winter* factors also weigh in favor of granting injunctive relief. In balancing the hardships, a court "must take into account the probability that declining to issue the injunction will permit the allegedly unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority." *Miller*, 19 F.3d at 460. There is considerable support in the record for a finding that the balance of the equities weighs in favor of an injunction. *See* discussion *supra*. No progress has been made since the parties resumed bargaining for SFP in March, Respondent has still not provided the requested payroll and waiver information, and bargaining for SFI has yet to resume. Thus, an injunction would serve to prevent Respondent from continuing to engage in the allegedly unfair

---

[4] The Court recognizes the delay in the filing of this petition in April 2022 when the Union brought charges in June 2021 and the NLRB filed a consolidated complaint in February 2022. But "[d]elay by itself is not a determinative factor." *Aguayo ex rel. N.L.R.B. v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988), *overruled on other grounds by Miller*, 19 F.3d 449. The NLRB is afforded "a reasonable period of time to investigate and deliberate before it decides to bring a section 10(j) action." *Id*. The question of reasonableness is fact dependent. *See, e.g., Pate v. Bodega Latina Corp.*, No. CV15-4228-GHK (AGRx), 2015 WL 12661924, at *6 (C.D. Cal. July 30, 2015) (thirteen-month delay from the first charges and two-month delay following the filing of consolidated complaint did not preclude finding of irreparable harm). The Court cannot say on this record that Petitioner unreasonably delayed in filing this petition while pursuing other avenues of relief.

labor practices. On the other side of the scale, Respondent has not argued (even in its stricken opposition) that it will suffer hardship if an injunction issues, and the risk of harm is generally "minimal" because "[t]he company is not compelled to do anything except bargain in good faith." *Scott*, 241 F.3d at 667. Finally, as Petitioner has made a "strong showing of likelihood of success and of likelihood of irreparable harm," she has also "established that preliminary relief is in the public interest." *Frankl*, 650 F.3d at 1365 (noting that the public interest in § 10(j) cases "is to ensure that an unfair labor practice will not succeed because the Board takes too long to investigate and adjudicate the charge" (quoting *Miller*, 19 F.3d at 460)).

Accordingly, as all four *Winter* factors favor Petitioner, the Court finds that a temporary injunction is appropriate.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's motion for a temporary injunction.

IT IS HEREBY ORDERED that, pending the final disposition of the matters at issue before the NLRB, an injunction shall issue directing Respondent, its officers, agents, successors, assigns, and all persons acting in concert or participation with it to:

(1) Upon request, meet and bargain with the Union as the exclusive collective-bargaining representative of the employees over terms and conditions of employment in good faith and at reasonable times and, if an agreement is reached, act in good faith to produce a signed agreement. Respondent shall not unreasonably delay in scheduling bargaining sessions, end bargaining sessions early, or refuse to meet and bargain with the Union. Respondent shall submit written bargaining progress reports every 30 days for each unit by serving copies thereof on the Regional Director for Region 31. The appropriate bargaining units are as follows:

### SFV Interventional Unit (SFI)

Included: All full-time, regular part-time, and per diem technical employees employed by Respondent at its facility at San Fernando Valley Interventional Radiology and Imaging Center located at 16311 Ventura Blvd., Suite 120, Encino, CA 91436.

Excluded: All other employees, managers, confidential employees, physicians, service employees, office clericals, and guards and supervisors as defined by the NLRA, as amended.

**SFV Advanced Imaging Unit (SFP)**

Included: All full-time, regular part-time, and per diem technical employees employed by Respondent at its facility at San Fernando Valley Advanced Imaging Center located at 14860 Roscoe Blvd., Suite 101, Panorama City, CA 91402.

Excluded: All other employees, managers, confidential employees, physicians, service employees, office clericals, and guards and supervisors as defined by the NLRA, as amended.

(2) Within 10 days of the issuance of the Court's Order, provide the Union with:

(a) Any and all lunch waiver forms utilized for the entire SFI bargaining unit since the federal government recognized the Union as the exclusive bargaining agent (i.e., March 14, 2018), and

(b) Payroll records for the entire SFI bargaining unit since the federal government recognized the Union as the exclusive bargaining agent (i.e., March 14, 2018).

(3) Within 5 days of the issuance of the Court's Order, post copies of the Order at its facilities, located at 16311 Ventura Blvd., Suite 120, Encino, CA 91436 and 14860 Roscoe Blvd., Suite 101, Panorama City, CA 91402, in prominent places, including in all places where notices to employees are customarily posted; maintain these postings during the pendency of the NLRB's administrative proceedings free from all obstructions and defacements; grant all employees free and unrestricted access to said postings, and provide for NLRB Board Agent access to monitor compliance with the posting requirement.

(4) Within 10 days of the Court's Order, disseminate the information in this Order in a manner by:

(a) Holding one or more mandatory employee meetings during regular business hours for each shift at both facilities, scheduled when Respondent customarily holds employee meetings and at a time and place designed to ensure widespread dissemination to all affected employees, at which the Order will be read to the bargaining unit employees by a

responsible Respondent official in the presence of a Board Agent or, at Respondent's option, by a Board Agent in the presence of a responsible Respondent official;

      (b)    Announce the meeting(s) for the Order reading in the same manner it would customarily announce a meeting of employees; and

      (b)    Require that all unit employees attend the meeting(s).

      (5)    Within 20 days of the issuance of the Court's Order, file with the Court, and serve upon the Regional Director of Region 31 of the NLRB, a sworn affidavit from a responsible official setting forth with specificity the manner in which Respondent has complied with the terms of the Order, including the locations of the posted documents.